## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**MARK R. JACKSON,**
        **Petitioner,**

**v.**                                          **Case No.   5:05cv140/RS/MD**

**JAMES R. MCDONOUGH,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 5) to which petitioner has replied (doc. 8).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On February 13, 2001 petitioner was charged by information in the Circuit Court of Okaloosa County with one count of robbery with a firearm and two counts of possession of a controlled substance.   On June 27, 2001 he pleaded nolo contendere in accordance with a plea agreement and was sentenced as an habitual

felony offender to thirty years imprisonment followed by ten years  probation on the robbery count, and to two five year sentences on the possession counts, concurrent to each other and concurrent to the robbery sentence.  Petitioner did not appeal his sentence.

On November 14, 2002 petitioner filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850.  The motion was denied without a hearing, and petitioner's appeal of that order was unsuccessful.  Petitioner also filed two motions to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800.  Both motions were denied summarily, and petitioner's appeals were unsuccessful.  He now seeks federal habeas relief.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the

Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241

(11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that:  "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

Petitioner presents five grounds for relief.  Respondent contends that some of petitioner's claims are procedurally defaulted.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[1] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal

---

[1]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even

as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11ᵗʰ Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11ᵗʰ Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Judd v. Haley*, 250 F.3d 1308,1313 (11ᵗʰ Cir. 2001); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11ᵗʰ Cir. 1995).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion." *Judd*, 250 F.3d at 1318, or in a manifestly unfair manner, *Ford v. Georgia*, 498 U.S. 411, 424-425, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d at 579.

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.*

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises five grounds for relief. For the reasons discussed below, none of these grounds entitle petitioner to federal habeas relief.

1. <u>Trial court error - failure to inform of consequences of habitualization.</u>

Petitioner first contends that his plea was involuntary because the trial court *and his attorney* failed to inform him of the collateral consequences of his plea. Specifically, he says that he was not told that habitualization would deny him certain post-conviction rights such as early release programs that might be available.

<u>State Court Decision</u>

Petitioner raised the court error part of this claim in his motion for post-conviction relief, but the Rule 3.850 court denied it, noting that the record of the plea colloquy and the written plea agreement disproved the contention.[2] The claim of trial

---

[2]In his Rule 3.850 motion petitioner did not contend that his attorney was deficient in not advising him of the collateral consequences of being habitualized (ex. A, pp. 12-13). It is too late for petitioner to return to the state court to raise an ineffective assistance of counsel claim on this specific issue, Therefore, to the extent that petitioner here contends that his attorney was ineffective in that regard, the claim is procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default. Thus, this court should not consider this aspect of petitioner's claim.

court error could and should have been raised on direct appeal, and since petitioner did not appeal, this claim would be procedurally barred.  However, the Rule 3.850 court did not apply the bar but ruled on the merits.  "[S]hould a state court reach the merits of a claim notwithstanding a procedural default, the federal habeas court is not precluded from considering the merits of the claim.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).  This court will therefore review the merits.

<u>Clearly Established Federal Law</u>

Because a plea of nolo contendere is treated as an admission of guilt, *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 129, 71 L.Ed. 347 (1926), the law applicable to guilty pleas is also applicable to no contest pleas.  *See Wallace v. Turner*, 695 F.2d 545, 546, 548 (11th Cir. 1983); *Henderson v. Singletary*, 837 F.Supp. 1176, 1178 (M.D. Fla. 1993)(citing *Carter v. Collins*, 918 F.2d 1198, 1200 n. 1 (5th Cir. 1990)).  It is error for a trial judge to accept a guilty plea "without an affirmative showing that it was intelligent and voluntary."  *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).  Failure to do so violates due process. *Id.*, 395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5.  The trial court should "conduct an on the record examination of the defendant which should include, *inter alia*, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences."  *Id.*, at 244 n. 7, 89 S.Ct. at 1713 n. 7.

<u>Federal Review of State Court Decision</u>

In denying petitioner relief, the state court pointed to the record of the plea colloquy and the written plea agreement, and held that the record showed that petitioner was advised of the consequences of a plea.  Relative to the habitualization issue, the written plea agreement contained the following "acknowledgment," which petitioner signed:

> I have read and understand the contents of this document ... that I have discussed with my attorney all of the ramifications or consequences of entering a plea of guilty or nolo contendere[.] . . . I am satisfied with the

**attorney's advice and services and my attorney has not compelled or induced me to enter into this agreement by any force, duress, threats, pressure or promises.**

(Ex. A, p. 30).  The handwritten terms of the agreement included this negotiated sentence: "30 years [D]epartment of [C]orrections," "stipulate habitual felony offender," and "10 year minimum mandatory sentence."  (Ex. A, p. 36, lines 6-10).  A "certification" similar to the "acknowledgment" appears near the beginning of the agreement (ex. A, p. 27).  Item 7 within the certification declared: "I understand that the maximum period of imprisonment ... [is] as indicated on page 1 of this agreement."  (Ex. A, p. 27).  The maximum period on page 1 of the agreement was noted to be life with a ten year minimum (*id.*).

At the outset of the plea hearing, defense counsel outlined that petitioner would receive a 30 year sentence as an habitual felon. The prosecutor added, without dispute, that there was a 10 year minimum (ex . A, pp. 32-33). Thus, petitioner was told he would not be released for at least the first 10 years of the 30 year sentence.

During the plea colloquy, this exchange occurred:

Q: [court]: Educational level?

A: [Petitioner]: High school.

Q: Did you read understand, and sign your written plea agreement?

A: Yes, sir.

Q: Did anybody mistreat you, coerce you or force you to sign it?

A: No, sir.

(Ex. A, p. 35).  From the foregoing several things are clear: petitioner knew that the maximum sentence for the primary charged offense was life in prison; he knew that he was stipulating to being sentenced as an habitual felony offender; he knew that he would serve a minimum of ten years; and he knew that he would be sentenced to thirty years.  He was sentenced as agreed.

However, petitioner says he did not know that by being sentenced as an

habitual felony offender, he would be denied certain (undefined by petitioner) early release rights.  He relies on *Ashley v. State*, 614 So.2d 486 (Fla. 1993).  There, a defendant pleaded guilty.  Three days later the state served notice that it intended to habitualize him, and he moved to withdraw his plea.  His request was denied, and he was sentenced as an habitual felony offended to a *greater* term in prison than the maximum he had pleaded to.  The *Ashley* court cited its prior decision in *Williams v. State*, 316 So.2d 267 (Fla. 1975) where, in keeping with *Boykin, supra*, it held that an accused must understand the maximum penalty which may be imposed.  The court noted that Florida's habitual felony offender statute, Fla. Stat. § 775.084 and Fla. R. Crim. P. 3.172, taken together, require that a defendant be informed of the possibility of being habitualized before entering a plea, since habitualization increases the maximum possible penalty.  The court then held that the defendant must be given notice of the state's intent to habitualize, and the trial court must confirm that the defendant is aware of the possibility and reasonable consequences of habitualization.  In a footnote, the court in *dicta* indicated that the defendant *should* be told that habitualization "may affect the possibility of early release through certain programs."  *Ashley*, 614 So.2d at 490 n. 8.

Thus, in Florida a defendant facing habitualization *should* be told of what petitioner says he was not told - that he would not be eligible for early release.  However, what is required in Florida is not necessarily required by the United States Constitution.  Federal habeas relief is available to correct only constitutional injury.  28 U. S. C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted);

*Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508  (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S.Ct. 668.  The question here, then, is whether notice of collateral consequences of a plea is constitutionally required.

Supreme Court precedent requires that a defendant be advised of the maximum penalty, *Boykin*, *supra*., but the Court has never said that the collateral consequences of a plea must be disclosed.  *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (no constitutional violation results from the state's alleged failure to inform petitioner regarding parole eligibility or other such collateral consequences of the plea); *Johnson v. Dees*, 581 F.2d 1166 (5th Cir. 1978). In a different but very similar context, the Eleventh Circuit has held that a defendant's counsel is not ineffective in failing to inform the defendant concerning

collateral consequences of a plea. *McCarthy v. United States*, 320 F.3d 1230 (11th Cir. 2003) (holding that counsel cannot be faulted for not telling a state defendant that conviction based on a plea might ultimately enhance his sentence if he were ever prosecuted federally); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) ("[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance."); *Wright v. United States*, 624 F.2d 667, 561 (5th Cir. 1980) ("[A] plea's possible enhancing effect on a subsequent sentence is merely a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters a plea.").[3]  Other Circuits agree.  *See Meyers v. Gillis*, 93 F.3d 1147 (3rd Cir. 1996) (explaining that the Constitution does not require that a defendant be provided with information concerning parole eligibility; however, where a defendant is provided parole eligibility information that is grossly erroneous, a defendant may be entitled to habeas relief where he can show that he would not have pleaded guilty had accurate information been provided); *Sparks v. Sowders*, 852 F.2d 882 (6th Cir. 1988) (holding advice that defendant would get life without parole, when there was no such penalty in the state and the actual maximum penalty was, in fact, life imprisonment with parole eligibility after serving eight years eligibility amounts to ineffective assistance of counsel); *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979) (explaining that while parole eligibility is a collateral consequence of a guilty plea of which a defendant need not be informed, when a defendant is grossly misinformed by his lawyer and relies on such information to the extent that the erroneous advice induces a guilty plea, his plea is involuntary); *O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir. 1983) (holding that grossly erroneous information regarding parole eligibility renders guilty plea involuntary); *Cepulonis v. Ponte*, 699 F.2d 573, 577 n.7 (1st Cir. 1983) (noting that a defendant need not be

---

[3]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 5:05cv140/RS/MD*

informed of the details of parole eligibility but misinformation may be more vulnerable to constitutional challenge than mere lack of information).

Thus, while petitioner may be correct in his assertion that Florida law *requires* its courts to explain the various collateral effects of habitualization, something this court need not decide, there is no federal constitutional requirement that the state court do so.  The instant case is not one in which there were critical errors, if indeed there were any errors, that a constitutional violation is apparent.  *Tejada v. Dugger, supra.*  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.

2.   <u>Involuntary plea due to counsel's coercion.</u>

Next petitioner says that his plea was coerced - that his lawyer told him that he would get life if he went to trial, and that he had no defense to the charge.

<u>Clearly Established Federal Law</u>

As previously discussed, the standard for determining the validity of a guilty or no contest plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Boykin v. Alabama*, 395 U.S. at 242, 89 S.Ct. 1709.  Voluntariness implicates "[i]gnorance, incomprehension, coercion, terror, inducements, [and] subtle or blatant threats. . . ." *Boykin v. Alabama*, 395 U.S. at 242-43, 89 S.Ct. at 1712.  In determining the voluntariness of a plea, a reviewing court must examine the totality of circumstances.  *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

When a prisoner contends that ineffective assistance of counsel led him to enter an improvident guilty plea, courts apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990)(citing *Hill v. Lockhart*, 474 U.S. at 58, 106 S.Ct. at 370).  Under *Strickland*, in order to prevail upon a claim of ineffective

assistance of counsel the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668 at 694, 104 S.Ct. 2052.  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).  Hence, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d at 1559; *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).  Further, in evaluating the reasonableness of counsel's actions, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068.  As the Court further explained in *Hill*:

> In the context of guilty pleas, . . . [t]he second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 58-59.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v.*

*White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069._____

 <u>Federal Review of State Court Decision</u>

_____The Rule 3.850 court denied relief on this claim, finding that it was belied by the record.  The parts of the plea agreement and the plea colloquy quoted in the foregoing section show that petitioner told the court he was not coerced.  In determining whether the safeguards in *Alford* and *Boykin, supra*, have been met, a judge must necessarily rely on a defendant's statements when entering the plea to ultimately determine whether the plea was voluntary.  "[R]epresentations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).  Here the trial judge reviewed the plea agreement, and petitioner admitted that he had read and understood it and that he had not been coerced into signing it or entering his plea.  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.

 3. <u>Involuntary plea due to psychotropic medication.</u>

 Petitioner next contends that he was taking various psychotropic medication at the time of his plea, and that the combination of the drugs rendered him mentally unable to plead knowingly and voluntarily.

 <u>Clearly Established Federal Law</u>

 To enter a valid plea a defendant must be competent, *i.e.*, have a present ability to have a rational and factual understanding of the proceedings against him. *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).  As

discussed in *Sheley v. Singletary*, 955 F.2d 1434 (11th Cir. 1992), the burden on a petitioner seeking federal habeas relief on grounds of incompetency is heavy: "courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner." *Id.*, 955 F.2d at 1438 (citations omitted).

<u>Federal Review of State Court Decision</u>

Petitioner raised this claim in his motion for post-conviction relief, and the trial judge denied it on the merits by citing to the plea agreement and the transcript of the plea colloquy.   Petitioner's plea agreement form asked him to disclose any medications he had consumed in the previous 24 hours.   The answer was "Buspar/co[?]nt."  (Ex. A, p. 27).  Below that entry is a hand written note saying "does not affect ability to enter into & understand agreement."  (*Id.*).  Petitioner initialed that statement.  At the plea colloquy the following discussion was had:

Q [The Court]: Are you on any medication today, last night, or this morning?

A [Petitioner]:   Yes, sir.

Q: And do they affect or impair your ability to think and act here this morning?

A: No, sir.

Q: Do you know what you're doing?

A: Yes, sir.

(Ex. A, p. 35).  Now petitioner presents a list of medications he alleges he was taking at the time of his plea, including Buspar, Sinequan, Zyprexa, Seroquel, Neurontin, Artane, Lithium and Haldol (doc. 8, p. 14).  However, this list was never presented to the state courts for consideration.  In his motion for post-conviction relief petitioner stated only that he was "under the influence of psychotropic medicine."  (Ex. A, p. 8).  At the plea he disclosed only Buspar and one other, and certified that they did not affect him.  It therefore appears that the specific factual basis of petitioner's federal claim - the identity of the psychotropic medications he asserts he was taking

- was never presented to the state court.

Habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992)*.*  Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court.  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, petitioner must have presented the instance of ineffective assistance that he now asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation." (internal quotation marks omitted)); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").  "Allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's 'full and fair opportunity to address the claim on the merits.'  The state would never have the benefit of evaluating the claim using a fully developed set of facts.  This would not be the 'serious and meaningful' exhaustion of claims that Congress intended."  *Footman*, 978 F.2d at 1211.  "Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief."  *Kelley v. Secretary*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Petitioner failed to present the specific facts raised here to the state court.  It is too late for him to return to the state courts to do so.  Thus, his claim is procedurally defaulted.  Petitioner has made none of the requisite showings to

excuse his default.  Therefore, this ground for relief is barred from review in this court.

If this court were to review the merits, the claim would fail.  Petitioner now says he was taking eight different medications at the time of his plea, but that is not what he told the trial court.  As noted above, the petitioner's testimony then is presumed to be true, and this court will not second guess the state court on facts different from those sworn to under oath.

4.  <u>State failed to file notice of intent to habitualize.</u>

Petitioner next contends that his federal constitutional rights were violated when the state failed to file a notice that it intended to seek habitualization.  This claim need not be discussed in detail because it is clearly unsupported.[4]  First, the requirement for written notice of intent to habitualize is a state law matter only.  Second, if the issue does have a federal constitutional dimension, the claim fails on the facts, because the notice was filed the same day as the plea (ex. PD, p. 3).  Third, the plea agreement on its face shows that petitioner stipulated that he was an habitual felony offender (ex. A, p. 27), and he confirmed that fact to the court (ex. A, p. 35-36).

5.  <u>Violation of single subject rule of Florida Constitution.</u>

Finally, petitioner contends that the statute under which he was habitualized was enacted contrary to the Florida Constitution.  This claim fails for reasons similar to the fourth, above.  First, this is clearly a state law issue.  Whether the Florida Constitution was violated is for the Florida courts to decide.  Second, the Florida courts have spoken, and ruled against the petitioner's position.  *Franklin v. State*, 887 So.2d  1063 (Fla. 2004) (holding that the Three-Strike Violent Felony Offender

---

[4]Additionally, this claim of a pre-plea constitutional defect was waived by petitioner's plea.  *Tollett v. Henderson*, 411 U.S. 256, 93 S.Ct. 1602, 36 L.Ed.2d  235 (1973) (holding that when a counseled plea is entered, challenges to pre-plea constitutional defects are waived, and the defendant may only attack the voluntary and intelligent character of the plea.  Petitioner is not entitled to federal habeas relief on this claim).

Act, Chapter 99-188, Laws of Florida, which amended the statute under which petitioner was habitualized, along with other statutes, did not violate the Florida Constitution). Third, as with petitioner's claim that notice of intent to habitualize was not properly filed, any alleged constitutional defect pre-dating the plea was waived by the plea.

Accordingly, it is respectfully RECOMMENDED that the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case *of State of Florida v. Mark R. Jackson*, in the Circuit Court of Okaloosa County, Florida, case no. 01 CF 101, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida this 26th day of July, 2007.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**